■ In the Matter of TOWN OF HUNTINGTON, Respondent, v LOCAL 342, LONG ISLAND PUBLIC SERVICE EMPLOYEES, UNITED MARINE DIVISION, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-CIO, et al., Appellants. [630 NYS2d 760] —In a proceeding pursuant to CPLR article 75 to vacate an arbitration award dated December 28, 1992, the appeal is from an order and judgment (one paper) of the Supreme Court, Suffolk County (Fierro, J.), entered November 12, 1993, which granted the petition and vacated the arbitration award and, in effect, denied the appellant's application to confirm the arbitration award.

Ordered that the order and judgment is reversed, on the law, with costs, the arbitration award is reinstated, the appellant's application to confirm the award is granted, and the award is confirmed in its entirety.

It is well-settled that when a dispute has been arbitrated pursuant to a broad arbitration agreement between the parties, the resulting award may not be vacated unless it is totally irrational, violative of a strong public policy, or clearly exceeds a specifically enumerated limitation of the arbitrator's power *(see, Matter of Town of Callicoon [Civil Serv. Empls. Assn.],* 70 NY2d 907, 908; *Matter of Local 342, Long Is. Pub. Serv. Empls. v Town of Huntington,* 195 AD2d 467, 468; *Matter of State Univ. v Young,* 170 AD2d 510, *lv denied* 80 NY2d 753, *cert denied* 506 US 1035).

In the case at bar the parties' collective bargaining agreement provided that in an emergency situation the Town of Huntington (hereinafter the Town) was obligated to first utilize its own workers before hiring any outside contractors. Therefore, the arbitrator's conclusion that the Town breached the agreement when it hired outside contractors in order to effect a one day removal of hurricane related debris, which had been stockpiled at a Town garage, without first utilizing the services of the aggrieved Town employee, was not irrational. Furthermore, "it is basic that an arbitrator's award, so long as it stays within the bounds of rationality, may not be vacated for errors of law or fact" *(Matter of Allen [New York State],* 53

NY2d 694, 696; *see also, Matter of Board of Educ. [Hess],* 49 NY2d 145, 151-152).

Nor was the award violative of any strong public policy. "Incantations of 'public policy' may not be advanced to overturn every arbitration award that impairs the flexibility of management * * * [o]nly when the award contravenes a strong public policy, almost invariably involving an important constitutional or statutory duty or responsibility, may it be set aside" *(Matter of Port Jefferson Sta. Teachers Assn. v Brookhaven-Comsewogue Union Free School Dist.,* 45 NY2d 898, 899). There is no question that the aftermath of the hurricane created an emergency situation within the Town's borders due to the fact that many roads were blocked by debris. These circumstances obligated the Town to clear and repair the roadways pursuant to its statutory duty to maintain its roadways *(see,* Highway Law § 140). However, although public policy dictated that the roadways be cleared, and the Town was statutorily obligated to do so, neither public policy nor statute mandated that the resultant pile of debris be removed in a single day. Moreover, the "instances where courts will intervene in the arbitration process are, without apparent exception, cases in which public policy considerations, embodied in statute or decisional law, prohibit, *in an absolute sense,* particular matters being decided or certain relief being granted by an arbitrator" *(Matter of Sprinzen [Nomberg],* 46 NY2d 623, 631) (emphasis added). We perceive no public policy consideration which prohibited the arbitrator "in an absolute sense" from rendering the award at bar.

Finally, in view of the agreement's broad arbitration clause, the award was not in excess of the arbitrator's power *(see, Matter of Town of Callicoon [Civil Serv. Empls. Assn.], supra,* 70 NY2d, at 908). Accordingly, the award of one day's overtime to the aggrieved employee should not have been vacated. Pizzuto, Santucci and Florio, JJ., concur.

Thompson, J. P., dissents and votes to affirm the order and judgment appealed from with the following memorandum. I dissent. In my view, the Supreme Court properly set aside the arbitrator's award.

The record reveals that on August 19, 1992, Hurricane Bob caused extensive damage to various roads in the Town of Huntington, resulting in the declaration of an emergency by the County Executive and the Town Supervisor. In order to fulfill its statutory obligation to clear away fallen trees, limbs, and other debris from the road *(see,* Highway Law § 140), the Town mobilized its workforce. For several days, Town employ-

ees removed debris by taking it either directly to a designated dump site or to the Town's Elwood Garage site.

Some five days after the debris removal had commenced, and because an excess amount of debris had been accumulated at the Elwood Garage site, the Town determined that the stockpile of debris at the garage posed both a storage problem and a safety hazard. Accordingly, the Town determined that it was necessary to transfer the debris to a dump site as soon as possible. To accomplish this task, it rented four, 40-yard capacity tractor-trailers which were operated by non-Town personnel, as required by the lessors of the equipment. Due to the extensive volume of the debris, six tractor-trailers were needed to perform the required work. The Town owned three tractor-trailers, but only two were operational at the time.

Thereafter, one Keith Buetal, a Town auxiliary equipment operator who did not posses a valid license to operate a tractor-trailer, filed a grievance. Buetal alleged that the Town's use of the tractors deprived him of the opportunity to work overtime on August 24, 1992, in violation of article 26 of the parties' collective bargaining agreement (hereinafter the agreement). Article 26, section b of the agreement states "[i]n an emergency, such as a snow removal, Town employees will be called in before any outside person or equipment". Notably, article 32 of the agreement states, in part, that "[e]xcept as otherwise expressly provided in this Agreement, nothing in this Agreement shall be deemed to limit the EMPLOYER in the exercise of the regular and customary functions of management".

The arbitrator ruled in favor of Mr. Buetal, concluding that although the Town was legitimately concerned with removing the debris as quickly as possible to avoid vandalism and fire, and that utilizing larger tractors would further this end, these concerns "did not mandate the manner in which the debris would be removed". According to the arbitrator, the Town could and should have used the smaller Town vehicles even though it would have taken longer to complete the job and would have required additional trips to the dumping area.

The arbitrator further ruled that it was not determinative that Mr. Buetal could not have operated the 40-yard capacity tractors which the Town had judged necessary to perform the work, since he could have operated the smaller Town-owned vehicles which the arbitrator concluded should have been utilized.

The Supreme Court vacated the arbitrator's award, concluding that it violated public policy by unduly impinging upon the Town's ability to discharge its obligation to maintain safe

roads. The court reasoned that, "[i]t was the Town's obligation under Sec. 140 * * * 'to maintain and repair' the highways, and its leasing of larger equipment than was available to it from its own supply to enable * * * this more expeditiously * * * was not an action which would justify * * * a request for overtime". The court further observed that to the extent that the Town was able to initially utilize its employees, it did so. I agree.

Although arbitration awards will generally not be disturbed by the courts, an award which is violative of a strong public policy, or is totally irrational is subject to vacatur *(see, Matter of Meehan v Nassau Community Coll.,* 152 AD2d 313, 316-317; *see also, Board of Educ. v Areman,* 41 NY2d 527).

Here, by effectively requiring the Town to utilize undersized equipment in responding to an emergency situation, the arbitrator deprived the Town of its ability to exercise its statutory duties in violation of public policy. Indeed, the arbitrator's ruling materially narrows the Town's ability to manage its work force and to select the most effective methods and strategies in dealing with an emergency since, under the arbitrator's construction, the paramount consideration is not the best interests of the public or public safety, but rather, the approach which will permit the use of Town employees.

Moreover, in my view, the arbitrator's construction of the agreement is irrational. Contrary to the majority's conclusion, this is not a case where the Town failed to utilize its own workers first. While the agreement does state that Town employees would be called in first to perform emergency work Town employees were called first and, in fact, had been removing debris for several days prior to the Town's decision to rent the tractor-trailers. However, under the contorted rationale employed by the arbitrator, the Town was nevertheless obligated to use smaller, unacceptable vehicles to perform the work—all so that a single employee could obtain one day of overtime compensation. Since the foregoing construction of the parties' agreement was both irrational and violative of public policy, the Supreme Court properly vacated the arbitration award.